**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

THOMAS C. O'BRYANT,

    Plaintiff,

v.        CASE NO. 1:10cv76-MP-GRJ

E.T. WILSON, et al.,

    Defendants.

_____/

**O R D E R**

    This matter is before the court on the Report and Recommendation of magistrate judge (doc. 53), recommending that this case be dismissed. The plaintiff filed objections and the court has conducted a de novo review of the objected to portions of the Report and Recommendation. Upon consideration, the court disagrees with the rationale in the Report and Recommendation in two respects, as outlined below, but agrees with the ultimate recommendation for dismissal and, therefore, will adopt that recommendation with the following explanation.

    The plaintiff, a prisoner, claims that prison officials concocted a disciplinary report ("DR") out of whole cloth and then denied him due process before and during his disciplinary hearing. The DR claimed that plaintiff refused to go to chow hall when directed to do so, that he recruited other inmates to join him in the refusal, that the names of these inmates were "verified," and that he hurled profanities at prison staff during the incident.

    Plaintiff alleges that before his hearing, he requested production of the videotape of the incident, a polygraph examination, the "verified" names of his accomplices and how they were "verified", and the exact profanities he was allegedly yelling during the incident. Plaintiff claims he never received the requested items. After the hearing, plaintiff received 60 days of disciplinary confinement and the loss of 100 days of gain time.

Plaintiff filed suit under 42 U.S.C. § 1983 claiming that the defendants' failure to provide the above items constituted a denial of his due process rights. He also claims that his due process rights were violated because the disciplinary hearing officers were biased; because the Secretary of the FDOC failed to properly supervise and train the officials to provide an unbiased and impartial disciplinary panel; because he was kept in disciplinary confinement for longer than directed by the panel; and because he was not given credit towards his disciplinary confinement for his time in administrative confinement before the hearing.

The magistrate judge recommended that the complaint be dismissed for three reasons. First, according to the magistrate judge, since plaintiff is essentially attacking the validity of his disciplinary conviction, this case is barred under *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997), which require a plaintiff to first overturn the finding through habeas corpus if necessary, before bringing a § 1983 action. Second, the magistrate judge concluded that even if plaintiff were allowed to bring his § 1983 action, he is not entitled to any due process because he has no liberty interest at stake. In cases like *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1978), the prisoner lost gain time and was also placed in disciplinary confinement. It was the loss of gain time, which increases the total time in jail, that gave rise to the liberty interest and concomitant due process requirements. However, in this case, the magistrate judge opines, petitioner is serving a life sentence, and Florida prisoners under a life sentence cannot earn gain time no matter how exemplary their behavior. Thus, the gain time he lost "on paper" would not affect the duration of his sentence, and he has no liberty interest regarding them. The magistrate judge also reasoned that, under *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), a prisoner has no liberty interest in staying in general population because a brief detention in administrative or disciplinary confinement is not an "atypical and significant hardship" compared to general prison life. Third, the magistrate judge concluded that even if plaintiff had a liberty interest in avoiding disciplinary confinement and thus enjoyed due process protections, the process that was provided was all that was due.

In his objections, plaintiff asserts that the prison officials are lying, and argues their responses to his grievances should be ignored. He also questions the magistrate judge's conclusion that life-sentenced prisoners will never have due process rights in disciplinary hearings because they cannot lose gain time and only a loss of gain time can lead to a liberty interest. Plaintiff argues that such reasoning "defies logic" and "draws the proverbial 'Iron Curtain' between an entire class of prisoners and the Constitution....This, in effect, turns all life-sentenced inmates into 'disciplinary punching bags' for prison officials." (Doc. 54, p. 3).

Upon consideration, the court concludes that the magistrate judge erred in his first and third recommended grounds for dismissal. First, *Heck* and *Balisok* do not apply to this case. The theory behind those cases and their progeny stems from *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). In *Preiser*, the Court held "that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500. The *Preiser* Court further instructed that

> [s]uch a challenge is just as close to the core of habeas corpus as an attack on the prisoner's conviction, for it goes directly to the constitutionality of his physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration.

*Id.* at 489. Here, because plaintiff is serving a life sentence, he cannot receive a determination that he is entitled to a speedier release from imprisonment or a shortening of the duration of his sentence if the disciplinary finding is found to be invalid. In a similar situation, the district court in *McKines v. Norwood*, 2008 WL 4808641 (C.D. Cal. 2008), found that a prisoner's challenge to a disciplinary conviction was not properly raised as a habeas action. The court in *McKines* discussed the rule from *Preiser* and then concluded

> [I]n petitioner's case, granting petitioner the relief he ultimately seeks-dismissal of the charges and sanctions against him and expungement of the discipline from his prison record-would not necessarily, or even potentially, shorten his life sentence. Petitioner's grounds, therefore, are not cognizable on habeas review.

*Case No: 1:10cv76-MP-GRJ*

*Id*. at *3.  *See also Osterback v. Crosby*, 2003 WL 21976145, *20-21 (N.D. Fla. 2003)(holding that plaintiff was not required to seek habeas relief to challenge his disciplinary conviction because he was serving a life sentence and success on his challenge would therefore not alter the length of his incarceration).  Since success on plaintiff's claims in the instant case would not alter the length of his incarceration, *Heck* and its progeny are not triggered by the instant case.

The magistrate judge also erred by taking the prison officials at their word and simply dismissing the plaintiff's allegations to find that the process given was all that was due.  At the motion-to-dismiss stage, the court must accept as true the plaintiff's allegations that the disciplinary report was fabricated, that there was a camera in the prison room, that no "verified" names of inmates were actually given during the hearing, and that the method of verification was never described.  The magistrate judge's conclusion was based on his belief in and acceptance of the statements of the prison officials in the responses to plaintiff's grievances.  For example, the Report and Recommendation finds that their was no videotape because the Warden of Mayo CI said there was no tape in a grievance response.[1]  These types of credibility determinations and factual findings are inappropriate at this stage.

Despite these two errors, however, the magistrate judge still reaches the correct conclusion on the dispositive issue in this case, i.e. whether life-sentenced prisoners have a liberty interest at stake in disciplinary hearings that could lead to disciplinary confinement.  Courts have routinely held that prisoners have no liberty interest in remaining in general population versus more restrictive confinement.  *See, e.g., Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983) (an inmate has no liberty interest in being confined in the general population rather than in the more restrictive atmosphere of administrative or disciplinary confinement).  Indeed, this court has ruled in this manner in one of plaintiff's previous cases:

> Plaintiff's punishment was only a period of disciplinary confinement and as

---

[1] Regarding the other items of evidence the plaintiff requested, the magistrate judge did not discuss them.

*Case No: 1:10cv76-MP-GRJ*

such even the limited *Wolff* due process protections were not available to him.

*O'Bryant v. Finch*, 2008 WL 691689 (citing *Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir.1998)).  In that previous case, the court expressly rejected O'Bryant's right to receive various pieces of evidence, such as the surveillance videotape.  Senior District Judge Lacey Collier, adopting and incorporating the Report and Recommendation of Magistrate Judge Miles Davis, ruled as follows:

> A critical difference between this case and *Howard* is whether the inmates had a liberty interest in the "deprivation" resulting from the DR proceedings. As a result of the charges from inmate Howard's DR the disciplinary hearing officer disallowed previously accumulated good-time credit, as well as recommended disciplinary segregation and a disciplinary transfer, suspended various privileges, and impounded Mr. Howard's personal property. Therefore, because Howard lost gain time and his sentence was thus "extended," a liberty interest was clearly implicated. In the case at bar, however, plaintiff was sentenced only to a term of disciplinary confinement of 30 days on this charge; thus, his discipline "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," and due process concerns were not implicated.

*Id*. at 15.[2]  The undersigned agrees with the magistrate judge that O'Bryant's liberty interests were not implicated in this case.

Accordingly, it is now **ORDERED** as follows:

1.  The Report and Recommendation of the magistrate judge is adopted in part and rejected in part as outlined above.

---

[2] While this language settles the legal question, the practical consequences are more troubling because, as plaintiff suggests in his Objections, this reasoning could promote, rather than discourage, the conduct of prison guards continuously fabricating DR's against prisoners they did not like. However, prisoners are not entirely without recourse.  First, in many cases, the prisoner will be able to allege that the DR was in retaliation for first amendment expression in the form of grievances.  As Judge Collier recognized in *O'Bryant v. Finch*, a prisoner has a First and Eighth Amendment right to be free from retaliatory DR's or searches. *Id.* at \*5-6; *see also Sandin,* 515 U.S. at 487 n.11.  Second, a plaintiff will still be able to allege that prison officials have engaged in so extensive a campaign of false disciplinary reports that his time in more restrictive confinement rises to the level of an atypical and significant hardship under *Sandin. See,e.g., Hatch v. District of Columbia,* 184 F.3d 846 (D.C. Cir. 1999)(stating that "[w]hen we compare [the prisoner's] confinement to administrative segregation, we must therefore look not only to the nature of the deprivation (e.g., loss of privileges, loss of out-of-cell time) but also to its length in evaluating its 'atypicality' and 'significance.'")  Short of those allegations, however, *Sandin* and its progeny compel the conclusion that a plaintiff does not have a liberty interest at stake.

     2.  The Motion to Dismiss (doc. 44) is GRANTED, and this case is DISMISSED WITH PREJUDICE.

     **DONE and ORDERED** this 10th day of August, 2012.

                        *s/ M. Casey Rodgers*
                        **M. CASEY RODGERS**
                        **CHIEF UNITED STATES DISTRICT JUDGE**